[No. 7631.   Decided April 20, 1909.]

NATIONAL CASH REGISTER COMPANY, *Appellant*, v. GEORGE
H. WAPPLES, *Respondent*.[1]

SALES—CONDITIONAL SALES—TRANSFER WHILE VENDEE IN ARREARS
—RIGHTS OF SUBSEQUENT PURCHASERS—DEFAULT—WAIVER—REPLEVIN
—TENDER AFTER SUIT BROUGHT. The purchaser of a cash register, from
a conditional vendee who was in arrears at the time, takes the right
and title of such vendee, where no default had been declared and
the contract did not stipulate against assignment, and he may tender
the balance due, with interest and costs, after suit brought, and
thereby defeat an action of replevin; since the provision that the
title is to remain in the vendor until the last installment is paid,
with the right to retake the property, is for the benefit of the vendor,
and is waived where time is not made of the essence and payments
are accepted after maturity and no default declared.

Appeal from a judgment of the superior court for What-
com county, Kellogg, J., entered February 26, 1908, upon
granting defendant's motion for judgment on the pleadings,
dismissing an action of replevin.   Affirmed.

*McBurney & Cummings* and *Black, Kindall & Kenyon,* for
appellant.

*Fairchild & Bruce,* for respondent.

MOUNT, J.—On August 23, 1905, 'the National Cash'
Register Company, entered into a written conditional sale
agreement with a copartnership, under the name of Smith
& Storrey, for the sale of a cash register from the former to
the latter.   The purchase price of the register was $450.
The payments were to be made in installments, $25 cash with
the order, $25 cash upon delivery, and $30 allowed for an old
cash register; the balance, $370, was to be paid in nineteen
monthly payments of $20 each, except the last one which was
$10, the deferred payments beginning on January 15, 1906.
The register was delivered to the purchaser about October
23, 1905, and $80 was paid as above stated.   The contract
provided that the title should remain in the vendor until the

'Reported in 101 Pac. 227.

contract price was paid in full; and if default occurred in making any payment, then the remaining installments became immediately due; and, also,

"In default of any payment, you or your agent may take possession of and remove said register without legal process, and in such case all payments theretofore made by the undersigned under this order shall be deemed and considered as having been made for the use of said register during the time the same remained in the possession of the undersigned, and shall be retained and kept by said register company as such payment."

The contract was duly recorded in the county auditor's office. In January, 1906, Smith & Storrey sold and delivered possession of the cash register to the Lynden Mercantile Company, without the knowledge of the Cash Register Company. Thereafter payments were made as follows: March 20, 1906, $20; April 21, 1906, $40; July 18, 1906, $40; November 6, 1906, $20. These payments were made by Smith & Storrey. No further payments were made, leaving a balance of $250 due on the purchase price. On December 8, 1906, the Lynden Mercantile Company was adjudged a bankrupt, and a trustee in bankruptcy took possession of the register, and on January 17, 1907, sold it to the respondent and gave respondent a bill of sale purporting to convey clear title. On March 15, 1907, the Cash Register Company demanded the balance due from respondent, who refused to pay, and directed that it file a claim with the trustee in bankruptcy. The Cash Register Company then demanded possession of the register. This demand was refused, and it thereupon brought this action in replevin to recover the machine. The respondent then tendered the amount due, with interest and costs, which the Cash Register Company refused to accept. The tender was paid into court when the answer was filed. These facts all appeared by the pleadings. Respondent thereupon moved for a judgment. This motion was granted, and a judgment entered declaring the money paid into court by the respondent to be the property of the appellant, and dismissing the ac-

tion. The plaintiff has appealed from that judgment.

The question in the case is whether the original vendee had any interest in the cash register which he might sell. The respondent does not now claim that he acquired any greater right than the original vendee had, but maintains that he has the same rights that the vendee would have had if he had not parted with his possession; in other words, that he stands in the place of the vendee in the contract and may make payment in full at any time before he is deprived of possession of the cash register. Upon this question the appellant cites and relies upon the case of *Lippincott v. Rich,* 19 Utah 140, 56 Pac. 806, to the effect that the plaintiff is not bound to accept an offer of payment from any other person than the original purchaser. In that case default had been made in the payment. The sale had been rescinded by the vendor, who had demanded possession of the property. After such default, the vendee transferred the property to a third party. Under these conditions the court in that case said that the transfer of the property "created no title in the defendants. The plaintiffs could not be compelled under such circumstances to accept against their will a new creditor, a new paymaster, or to make a new contract of sale." That is clearly the general rule, and the decision there was no doubt right. In the case at bar the sale had not been rescinded, and no demand had been made for the cash register until after the transfer by the vendee to a third party, and another transfer by that party to the respondent. There was then a demand for payment of the balance due, and a refusal by the respondent to pay, and then followed a demand for the property. The contract provides:

"Should there be any default in the payment of any installment it is agreed that all the remaining installments shall at once become due and payable. . . . In default of any payment you or your agent may take possession of and remove said register without legal process, and in *such case* all payments theretofore made . . . shall be deemed

and considered as having been paid for the use of said register."

This provision was clearly intended for the benefit of the vendor. He might waive the right to take possession after default in the payment of any installment, and rely upon his right to recover the whole purchase price, which thereby became immediately due; or he might obtain possession at any time after default in the payments, and thereupon all payments made should be considered as having been made for the use of the register. But until the vendor exercises his right by demanding or taking possession, the vendee retains his interest, with the right to pay the whole balance due or surrender the possession, as he chose. This was a valuable right, and might be sold or transferred subject to all the rights of the vendor under the contract. There was no provision in the contract against a transfer by the vendee of his interest, and time is not made of the essence of the contract.

"According to the prevailing rule the purchaser from a conditional vendee before default by the latter may acquire all of his vendor's rights under the contract, and if the conditions are duly performed or tendered by his vendor or by himself, he may obtain a perfect title to the goods. It has been judicially declared that although the conditional vendor remains the general owner until the condition is performed, yet the conditional vendee before default or after a default which has been waived by the vendor has an interest in the property as special owner which the law recognizes and protects." Burdick, Sales (2d ed.), p. 188, § 309.

See, also, 1 Mechem, Sales, § 588; Benjamin, Sales (7th ed.), p. 300; *Hatch v. Lamos*, 65 N. H. 1, 17 Atl. 979.

In this case the installments were past due. None of the payments had been made at maturity, except the payments made at the time of delivery. All the subsequent payments were made after maturity. The vendee was in arrears with his payments, but he was not in default. And if he was in default, such default was waived by the vendor because no demand had been made for the property. The vendee might

at any time, even after an action in claim and delivery was begun, pay the whole amount due with interest and costs, and acquire an absolute title. *Gilbert Co. v. Husted*, 50 Wash. 61, 96 Pac. 835; *National Cash Register Co. v. Petsas*, 43 Wash. 376, 86 Pac. 662. The respondent, as seen above, having succeeded to this right of the original vendee, stood in the same position, and was therefore at liberty to pay the balance due and obtain the title.

We think the judgment was right upon the facts stated in the pleadings, and it is therefore affirmed.

CROW, FULLERTON, CHADWICK, DUNBAR, and GOSE, JJ., concur.